UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE B. BLACKWELL,

    Plaintiff,

        v.

SECTEK, INC.

    Defendant.

Civil Action No. 13-1536 (JDB)

## MEMORANDUM OPINION

Plaintiff Eugene B. Blackwell, proceeding pro se, brings this action against his employer, SecTek, Inc. ("SecTek"). Blackwell alleges employment discrimination and a hostile work environment in violation of the Americans with Disabilities Act of 1990 ("ADA") and the Age Discrimination in Employment Act of 1976 ("ADEA"). SecTek has moved to dismiss Blackwell's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, SecTek's motion will be granted and Blackwell's complaint will be dismissed.

### BACKGROUND[1]

SekTec hired Blackwell as a security officer for the Washington, D.C. headquarters of the National Aeronautics and Space Administration ("NASA") in 2006. 2d Am. Compl. at 1. In this position, Blackwell's duties include "control[ling] access to specific areas of [the NASA] facility; enforce[ing] property rules and regulations; . . . stop[ping] and if possible, detain[ing] persons engaged in criminal activities; . . . [and] respond[ing] to emergency situations involving

---

[1] This factual background is drawn from Blackwell's original complaint, see Pl.'s Compl. [ECF No. 1-1] ("Compl."); his amended complaint, see Pl.'s Mot. to Submit Exs. [ECF No. 7] ("Am. Compl."); and his second amended complaint, see Pl.'s 2d Am. Compl. [ECF No. 12] ("2d Am. Compl."). The Court assumes, as it must on a motion to dismiss, that the factual allegations made in these pleadings are true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

the safety and security of the facility." Id. at 7. In October 2011, when SecTek's allegedly discriminatory conduct began, Blackwell was seventy-three years old. Id. at 1.

On the morning of October 5, 2011, when Blackwell reported for work at the NASA facility, he parked his car in a handicapped parking space in the facility's parking garage. Pl.'s Am. Compl. at 4. Blackwell's supervisor, Joshua Primrose, asked whether he had a permit authorizing him to use the space. Blackwell replied that he did. Id. The next day, Primrose told Blackwell that SecTek had decided to require him to take a "Physical [examination] and [a] Stress Test" at SecTek's expense, and that—despite Blackwell's objections—he could not return to work until the tests were complete. Id.

Blackwell reported to We Care Physicals, LLC for "agility, vision, medical history, and physical testing." 2d Am. Compl. at 3. Lillian Willis, a physician's assistant, performed the physical exam. Instead of indicating that Blackwell had "no limiting conditions for [his] job," see id. at 4 (listing "disqualifying factors" for the security officer position, including "any disease or condition that interferes with the [employee's] cardiovascular function and the [employee's] safe and efficient job performance"), Willis noted in her medical findings that Blackwell suffered from "organic heart disease" and diabetes. Id. at 8-9. Because of these conditions—or, in Blackwell's view, "because [We Care Physicals] did not want to be liable for [Blackwell] if something happened to [him]"—Willis decided that a "doctor's clearance" would be necessary before any "agility testing" could be conducted. Id. Without completing any further testing, Blackwell returned to the NASA facility and delivered the results of Willis's exam to a Lieutenant Jenkins, who promised to pass them on to Primrose. Am. Compl. at 4.

A few days later, Blackwell reported to the NASA facility for his next previously scheduled duty shift. Id. When he arrived, however, he found that his shift had been assigned to

2

another officer, because Blackwell's "test was not complete[] without the stress test." Id. After protesting that it was We Care Physicals' fault, not his, that he was unable to complete the testing, Blackwell "requested to be on vacation leave" while he completed the remaining tests. Id. Blackwell was then given four hours' pay for the day and sent home. Id.

Later, Blackwell "informed [Primrose] that [he] would have to go to [his] personal Primary Care [provider]," Kaiser Permanente, to have the final tests conducted.[2] Id. Blackwell took and passed the stress test at a Kaiser Permanente facility, and he incurred a $75 copay by using his own health insurance to pay for the test. Id. A nurse provided him with a "Verification of Treatment" letter, see Pl.'s Opp'n at 6, which he took to Primrose that day, expecting that it would resolve SecTek's concerns about his health. According to Blackwell, however, Primrose was not satisfied with "the wording of the letter," Am. Compl. at 4, which stated only that Blackwell had "[c]ompleted the Nuclear Stress Test today[,] 10/20/2011." Pl.'s Opp'n at 6. Primrose refused to return Blackwell to the schedule.

The next day, Blackwell returned to Primrose with a revised version of the letter, which was now signed by a doctor and explicitly stated that Blackwell "may return to his work duties." Pl.'s Opp'n at 8. Primrose rejected this letter as well. Am. Compl. at 5. Only after Blackwell obtained a third letter—and even then, only after a NASA official intervened on Blackwell's behalf—did Primrose accept Blackwell's test results. See 2d Am. Compl. at 1. Blackwell returned to work on October 26, 2011. Am. Compl. at 5.

---

[2] Blackwell does not explain why he told Primrose this. See, e.g., Supp. Mem. in Opp'n to Def.'s Mot. to Dismiss Pl.'s 2d Am. Compl. [ECF No. 19] ("Pl.'s Opp'n") at 1 (explaining only that "[i]t was decided that I would take the test at Kai[s]er Permanente"). SecTek does not claim, however, to have offered to pay for the subsequent testing. See generally Def.'s Mot. to Dismiss Pl.'s 2d Am. Compl. [ECF No. 14] ("Mot. to Dismiss"). And because courts must draw factual inferences in the plaintiff's favor on a motion to dismiss, see Autor v. Pritzker, 740 F.3d 176, 178 (D.C. Cir. 2014), the Court will assume that Blackwell did not pay for the testing voluntarily.

According to Blackwell, this ordeal was not the end of his problems with SecTek. Blackwell claims that after he returned to work, Primrose and his other SecTek supervisors were "[i]nsulting, [i]ntimidating, harassing, and discriminating" towards him, Am. Compl. at 6-7, apparently in an attempt to "get rid of [him] if [they] could." Pl.'s Opp'n at 3. Specifically, Blackwell alleges that Primrose "placed camer[a]s on me," "tr[ied] to fire me," and "insulted and disrespected me every chance that he could." Id. at 2.

Presumably because of this alleged mistreatment, Blackwell filed an administrative charge with the U.S. Equal Employment Opportunity Commission ("EEOC") in November 2011, claiming discrimination on the basis of age and disability in violation of the ADEA and ADA. Am. Compl. at 2. Neither Blackwell's complaint nor SecTek's memorandum in support of its motion to dismiss explicitly states the outcome of Blackwell's EEOC charge. But Blackwell does claim that in December 2012, he received a letter from the EEOC in which "the Commission . . . issued a determination on the merits of [his] charge." Pl.'s Opp'n at 2. Blackwell then proceeds to make the following statements in his complaint, which appear to be the findings of the EEOC charge: "I utilized a handicapped parking permit and space. . . . Primrose became aware of me using the space and moved to have me removed from the contract. At no time did . . . Primrose inquire about my disability or my reason for using the handicapped permit." Id.

Although it is not readily apparent from the parties' pleadings, the Court infers from these statements that the EEOC dismissed Blackwell's administrative charge because Primrose did not impermissibly "inquire about [Blackwell's] disability." And because the EEOC's dismissal of Blackwell's administrative charge is a precondition to suit under the ADA and ADEA, see 42 U.S.C. § 12117(b); 29 U.S.C. § 626(d), Blackwell could not bring this action

4

unless the EEOC had dismissed his charge. Therefore, the Court's inference is drawn in Blackwell's favor.

The final alleged incident of discrimination took place in December 2011, when Blackwell "approached [the SecTek] office . . . to sign out for the day . . . at 5 minutes to 3:00 p[.]m." Am. Compl. at 6. Apparently, Blackwell's shift was not scheduled to end until exactly 3:00 p.m., because a supervisor immediately reprimanded him for attempting to leave early. Id. at 6. Blackwell claims that this was a "petty violation" deserving "a verbal warning, at best," and that his supervisors should have "wr[itten] up [his] relief for being late." Pl.'s Opp'n at 3. Instead, this supervisor and Primrose "wrote [Blackwell] up" and assigned him "4 to 8 [demerit] points." Am. Compl. at 6. This incident, Blackwell contends, was part of a larger "conspiracy . . . to fire me," which began with the medical tests in October. Pl.'s Opp'n at 3.

Over a year and a half later,[3] Blackwell brought suit against SecTek in D.C. Superior Court, alleging disability discrimination in violation of the ADA and age discrimination in violation of the ADEA. See Compl. at 2. Read broadly,[4] Blackwell's complaint also alleges violations of these statutes under a "hostile work environment" theory. Id. SecTek removed the action to this Court on diversity grounds under 28 U.S.C. §§ 1441 and 1332. See Def.'s Notice of Removal [ECF No. 1]. SecTek then moved to dismiss Blackwell's claims under Federal Rule of Civil Procedure 12(b)(6), arguing that Blackwell has failed to state a claim for relief. See Def.'s Mot. to Dismiss [ECF No. 6].

---

[3] By incorporating Title VII procedures, see 42 U.S.C. § 12117(b), the ADA requires an employee to bring a private action against his employer within ninety days of receiving a notice of his right to sue from the EEOC. 42 U.S.C. § 2000e-5(f)(1). As discussed above, Blackwell appears to have received notice of his right to sue in December 2012, but did not bring suit in D.C. Superior Court until July 2013. SecTek does not raise the timeliness of Blackwell's claims as a defense, however, so the Court need not consider the issue any further.

[4] "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks omitted).

After the deadline for his response to SecTek's motion had passed, Blackwell moved to submit "exhibits" in support of his complaint.[5] See Am. Compl. The Court granted his motion, but construed the "exhibits" as an amendment to Blackwell's original complaint. See Order [ECF No. 10] at 2. SecTek then moved to dismiss this so-construed amended complaint. Def.'s Mot. to Dismiss Pl.'s Am. Compl. [ECF No. 11].

Instead of filing an opposition to the motion, Blackwell filed a second amended complaint three days later, see 2d Am. Compl., which the Court also granted leave to file. See Feb. 20, 2014 Order [ECF No. 13]. SecTek then moved to dismiss this second amended complaint. See Def.'s Mot. to Dismiss Pl.'s 2d Am. Compl. [ECF No. 14] ("Mot. to Dismiss"). After filing a one-sentence opposition in response, Blackwell filed what he again called an "amended complaint." Pl.'s Opp'n at 1. The Court construed this pleading as a supplemental memorandum in opposition to SecTek's motion to dismiss. See Pl.'s Opp'n. Thus, before the Court now is SecTek's motion to dismiss Blackwell's second amended complaint, opposed primarily by Blackwell's so-construed supplemental memorandum.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson, 551 U.S. at 93. Although "detailed factual allegations" are not necessary, to provide the "grounds" of "entitle[ment] to relief," plaintiffs must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

---

[5] The Court allowed Blackwell's "motion" to be filed despite its untimeliness, noting that "[it] was filed just a few days after the deadline passed to amend as a matter of course under Federal Civil Rule 15(a)(1)(B)." See Jan. 27, 2014 Order [ECF No. 10].

Twombly, 550 U.S. at 555 (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570); accord Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009). Determining the plausibility of a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

## DISCUSSION

Liberally construed, Blackwell's complaint brings three claims for employment discrimination against SecTek: (1) discrimination on the basis of age in violation of the ADEA, (2) discrimination on the basis of disability in violation of the ADA, and (3) a "hostile work environment" in violation of both the ADA and ADEA. SecTek moves to dismiss all three claims under Rule 12(b)(6) for failure to state a claim for relief. The Court will consider these claims in turn.

### I. ADA Claim

In relevant part, the ADA provides that: "No covered entity [including employers] shall discriminate against a qualified individual on the basis of a disability in regard to . . . [his] terms, conditions, and privileges of employment." 42 U.S.C. § 12112. To state a claim for employment discrimination under the statute, a plaintiff must allege: "[1] that he had a disability within the meaning of the ADA, [2] that he was 'qualified' for the position . . . , and [3] that he suffered an adverse employment action because of his disability." Swanks v. WMATA, 179 F.3d 929, 934 (D.C. Cir. 1999). Because a plaintiff survives a motion to dismiss only if he alleges "sufficient factual matter . . . to state a claim to relief that is plausible on its face," Iqbal, 556 U.S. at 678

(internal quotation marks omitted), Blackwell's complaint must allege facts plausibly suggesting that each element has been satisfied to survive SecTek's motion.

### a.     Blackwell Has Alleged a Disability Within the Meaning of the ADA

Blackwell must first allege that he has a "disability" within the meaning of the ADA. Swanks, 179 F.3d at 934. The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1). "The operation of a major bodily function, including . . . circulatory . . . functions," is a "major life activity." Id. § 12102(2)(B). And according to EEOC regulations, the term "substantially limits" is to be "construed broadly in favor of expansive coverage." 29 C.F.R. § 1630.2; see also 42 U.S.C. § 12102(4)(B)–(E) (generally defining a broad scope for the term "substantially limits"); Green v. American Univ., 647 F. Supp. 2d 21, 29 (D.D.C. 2009) (holding that an individual with "a condition similar to irritable bowel syndrome" pleaded a disability because "the functioning of the bowels [is] a major life activity"); Johnson v. District of Columbia, 572 F. Supp. 2d 94, 106-07 (D.D.C. 2008) (holding that an individual alleged a disability under the ADA because he was blind in one eye and had severe diabetes, causing him to fall asleep at unpredictable times).

Blackwell's complaint does not specifically identify his disability. But in her medical findings, as described in Blackwell's complaint, Willis, the physician's assistant at We Care Physicals, noted that Blackwell suffers from "organic heart disease," and this condition was apparently serious enough to lead Willis to delay more strenuous testing. See 2d Am. Compl. at 9. Assuming that Willis's findings were accurate, it is at least plausible that Blackwell suffers from a physical impairment—heart disease—that "substantially limits" the operation of his

"circulatory functions." Thus, because the operation of an individual's circulatory functions is a "major life activity," Blackwell has sufficiently pleaded a disability under the ADA.

### b. Blackwell Has Alleged That He is Qualified for the Security Officer Position

SecTek also argues that Blackwell has failed to allege that he is a "qualified individual" for the security officer position. Mot. to Dismiss at 10. An individual is qualified for a position under the ADA if "with or without reasonable accommodation, [he] can perform the essential functions of the employment position," although "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8) (also instructing courts to defer to "a written description" of the job prepared by the employer).

The "Certificate of Medical Examination" included in Blackwell's complaint describes his job duties: he is expected to "control access to specific areas of a facility; . . . detect and report criminal acts; stop and if possible, detain persons engaged in criminal activities; . . . [and] respond to emergency situations involving the safety and security of the facility." 2d Am. Compl. at 7. And documents attached to that described "disqualifying factors" for the security officer position, which include "any disease or condition that interferes with [both] the [employee's] cardiovascular function and the [employee's] safe and efficient job performance." Id. at 4. (emphasis added) According to Blackwell's complaint, SecTek prepared this description in advance of Blackwell's medical exam with We Care Physicals. See 2d Am. Compl. at 3 (a letter instructing Blackwell to carry a packet of pre-prepared forms, including the Certificate of Medical Examination, to We Care Physicals, where the examining physician was to fill them out). Thus, this description represents the "employer's judgment" as to which functions of the security officer position are "essential." It therefore identifies the "essential functions" of Blackwell's job for the purposes of his ADA claim. See 42 U.S.C. § 12111(8).

Pointing to Blackwell's statement that it was "almost impossible for me to pass a stress test," SecTek argues that Blackwell's "own allegations demonstrate his inability to perform the essential functions of his position" as described above. See Mot. to Dismiss at 11 (quoting 2d Am. Compl. at 1). But as Blackwell alleges and SecTek does not dispute, Blackwell did pass the stress test, Am. Compl. at 4, and he ultimately obtained a letter from a doctor explicitly stating that he "may return to his work duties." Pl.'s Opp'n at 8. Thus, the mere fact that Blackwell initially doubted his ability to complete the test does not make Blackwell's ability to perform his job duties implausible. Instead, assuming that the stress test is designed to measure an employee's ability to perform the essential functions of the security officer job—such as stopping criminals and responding to emergencies—the fact that Blackwell ultimately passed suggests that he is qualified.

Moreover, it appears from the parties' pleadings that Blackwell still works for SecTek as a security officer. And as SecTek itself argues, "officers under the NASA contract could not work if '[a]ny disease or condition [] interfere[d] with cardiovascular function <u>and</u> the individual's safe and efficient job performance.'" See Mot. to Dismiss at 10 (quoting 2d Am. Compl. at 4) (emphasis added). Assuming that SecTek has the contractual right to terminate an employee who "[can] not work" for medical reasons, then logically either Blackwell's cardiovascular condition is not serious enough to "interfere with [his] safe and efficient job performance," or Blackwell is in fact unqualified and SecTek has nonetheless chosen to continue employing an unqualified security officer. The Court need not—and does not—determine which of these possibilities is in fact the case. But assuming, as the Court must at this stage, that Blackwell passed the stress test and that he continues to be employed at SecTek, it is at least plausible that he is qualified for the security officer position despite his heart condition because it

did not interfere with the safe and efficient performance of his duties. Blackwell has thus successfully alleged the second element of employment discrimination under the ADA.

### c. Blackwell Fails to Allege an Adverse Employment Action under the ADA

Finally, SecTek argues that Blackwell fails to allege an adverse employment action within the meaning of the ADA. An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998).[6] Such an action must "materially affect . . . the terms, conditions, or privileges of employment . . . such that a reasonable trier of fact could find objectively tangible harm." Douglas v. Donovan, 449 F.3d 551, 552 (D.C. Cir. 2009).[7] In most circumstances, an adverse employment action will "inflict direct economic harm." Burlington, 524 U.S. at 762.

Although Blackwell's complaint does not specifically identify any action taken by SecTek as an adverse employment action, the Court will consider four possible adverse employment actions that Blackwell's complaint could be construed to allege. First, Blackwell claims that SecTek required him—and no other employees—to undergo a medical examination consisting of a physical and a stress test. Second, he alleges that SecTek required him to pay for that stress test with his own personal health insurance. Third, he alleges that he was required to take paid leave while he was waiting for clearance to return to work. And finally, he claims that

---

[6] Although Burlington discussed adverse action in the Title VII context, courts have subsequently applied Title VII principles in considering adverse employment actions under the ADA. See, e.g., Weigert v. Georgetown Univ., 120 F. Supp. 2d 1, 17-20 (D.D.C. 2000) ("Because the ADA incorporates the procedures of Title VII, rulings in this area applying to adverse actions are relevant [to evaluating adverse actions under the ADA].").

[7] This ensures that an employer is held vicariously liable for a supervisor's discriminatory acts only where the supervisor was "aided in accomplishing the [discrimination] by the existence of [his] relation" to the employer. Burlington, 524 U.S. at 758. Thus, for example, while "[a] co-worker can break a co-worker's arm" for discriminatory reasons "as easily as a supervisor, . . . one co-worker cannot dock another's pay." Id. at 762. Such an act "fall[s] within the special province of the supervisor," who "has been empowered by the [employer] . . . to make economic decisions affecting other employees under his or her control." Id.

SecTek unfairly disciplined him two months after completing the medical tests and returning to work.

> i. <u>Physical exam and stress test</u>

The first potential adverse action alleged in Blackwell's complaint is the medical exam itself. Subject to certain exceptions, the ADA provides that its general prohibition against discrimination "shall include medical examinations and inquiries" by an employer. § 12112(d)(1). Specifically, an employer may not "require a medical examination [or] make inquiries of an employee as to whether such an employee is an individual with a disability or as to the nature or severity of the disability." § 12112(d)(4)(A). Here, Blackwell alleges that he was required to complete a series of medical tests just one day after his supervisor discovered his DMV-issued handicap parking permit. And "[t]o [his] knowledge, others were not subjected to the same tests." Am. Compl. at 2. Assuming these facts to be true, it is at least plausible to infer that the purpose of the medical examinations was to determine "whether [Blackwell] is an individual with a disability or as to the nature or severity of [his] disability." Thus, if none of section 12112(d)'s exceptions apply, then the medical examination qualifies as an adverse action under the ADA.

One exception to the ADA's prohibition on disability-related medical inquiries, however, is that employers "may make inquiries into the ability of an employee to perform job-related functions." § 12112(d)(4)(B); <u>see, e.g.</u>, <u>Doe v. U.S. Postal Serv.</u>, 317 F.3d 339, 345 (D.C. Cir. 2003) (holding that an employer's inquiry into the reason for an employee's work absences was a permissible job-related inquiry under the ADA). Again, Blackwell's complaint alleges that his duties as a security officer—the "job-related functions" at issue here—include physically strenuous tasks like responding to emergencies and "stop[ping] and if possible, detain[ing]

persons engaged in criminal activities." 2d Am. Compl. at 7. And SecTek's required medical examination consisted of "agility, vision, medical history, and physical testing." Id. at 1, 3 ("[The medical exam could include] 20 push-ups, knee bends, touch[ing] ankles, etc."). Because vision, agility, and strength are required to "stop and if possible, detain" a criminal or to "respond to [an] emergency," these tests were plausibly related to Blackwell's ability to perform his job duties. 2d Am. Compl. at 7. Blackwell has therefore failed to plead that the physical exam and stress test were not "job-related," and hence they do not constitute adverse employment action under the ADA.

   ii.  Medical copay

Blackwell also claims to have used his personal health insurance to pay for the stress test. Am. Compl. at 4. The ADA, which allows disability-related medical inquiries into "the ability of an employee to perform job-related functions," section 12212(d)(4)(B), does not specify who must pay for those inquiries. See generally § 12112(d). Although few courts have considered the issue, the Fourth Circuit has held (at least implicitly) that forcing an employee to pay for a medical examination is not an independent adverse employment action. See Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997) (dismissing an employee's disability discrimination claim in part because the employee had refused to complete a job-related, employer-required medical examination at his own expense); see also Sullivan v. River Valley School Dist., 197 F.3d 804, 812 (6th Cir. 1999) ("Though we also need not decide today whether the [defendant-employer] could require [the plaintiff-employee] to pay for the examinations, we note that the Fourth Circuit [in Porter] has upheld a dismissal where the employee refused to pay for a fitness-for-return-to-duty exam."). Other courts have held that requiring a job applicant to pay for a pre-employment medical exam is not an adverse employment action. See Laurent v.

13

G&G Bus Serv., No. 10 Civ. 4055, 2013 WL 5354733, at *4 (S.D.N.Y. Sept. 25, 2013). And one court has presumed that an employer's failure to pay for a medical exam would be an adverse employment action only if the employer had a pre-existing contractual obligation to pay for the exam. Leitch v. MVM, No. 03–4344, 2004 WL 1638132, at *6 (E.D.P.A. July 22, 2004).

Here, Blackwell alleges that he was required to pay a $75 copay out-of-pocket to complete the stress test. He does not allege that SecTek was obligated—contractually or otherwise—to pay for the test. And although the one-time copay of $75 might have "inflict[ed] direct economic harm" on Blackwell, it was not "a significant change in employment status" akin to "hiring, firing, failing to promote, [or] reassignment with significantly different responsibilities." Burlington, 524 U.S. at 762. It therefore did not rise to the level of an adverse employment action under the ADA.

### iii. Paid vacation leave

Blackwell also alleges that he was forced to take a total of fifty-two hours of paid vacation leave between October 11, 2011 (when he first missed a duty shift because of the exams) and October 26, 2011 (when he was cleared for duty and reinstated). See Am. Compl. at 4. Although forcing an employee to take leave without pay may constitute an adverse employment action, see Franklin v. Potter, 600 F. Supp. 2d 38, 72 (D.D.C. 2009), courts are reluctant to find an adverse action where an employee is paid for the time off—even if the employee has to take vacation time. See Walker v. Johnson, 501 F. Supp. 2d 156, 172 (D.D.C. 2007) (forcing an employee to take ten hours of paid administrative leave was not adverse employment action); O'Neill v. City of Bridgeport Police, 719 F. Supp. 2d 219, 227 (D. Conn. 2010) (forcing employee to take vacation time to observe a religious holiday was not adverse employment action); EEOC v. Bloomberg LP, 500 F. Supp. 2d 224, 230 (S.D.N.Y. 2007)

14

(forcing an employee to consolidate her vacation time into a two-week period was not adverse employment action).

Here, Blackwell claims that instead of having to take paid vacation time, he "should have been on [a]dmin[istrative] leave or comp[ensatory] time [off]." Pl.'s Opp'n at 3. But he also alleges that when he was first taken off of the work schedule, he "requested to be on vacation leave until [he could] return to work." Am. Compl. at 4. Of course, it is possible that Blackwell asked to take vacation time under the assumption that he would otherwise be placed on unpaid leave. But even drawing this factual inference in Blackwell's favor—as the Court must in this posture—forcing an employee to take paid vacation leave does not "constitute[] a significant change in [his] employment status." Burlington, 524 U.S. at 761; cf. Sethi v. Narod, 2014 WL 1343069, at *15 (E.D.N.Y. 2014) (holding that depriving an employee of vacation days to which he was entitled would constitute adverse action). SecTek's deduction of vacation time for Blackwell's October absences is therefore not an adverse employment action under the ADA.

   iv. Disciplinary action

The fourth and final alleged adverse employment action took place in December 2011, when Blackwell was "written up" for attempting to leave five minutes before the end of his shift. Am. Compl. at 6. Like any other potential adverse employment action, a disciplinary action must cause "objectively tangible harm" to qualify, Douglas, 449 F.3d at 552, and "interlocutory or mediate decisions having no immediate effect upon employment conditions" are insufficient, Taylor v. FDIC, 132 F.3d 753, 765 (D.C. Cir. 1997) (internal quotation marks omitted); see also Walker v. WMATA, 102 F. Supp. 2d 24, 29 (D.D.C. 2000) (holding that an employer's "letter of admonishment" following an employee's allegedly inappropriate behavior toward a customer was not an adverse action).

Here, Blackwell does not allege that the write-up or the "4 to 8 [demerit] points" resulted in any "direct economic harm," such as a reduction in salary or benefits. See Burlington, 524 U.S. at 762. And he offers no explanation of how either disciplinary action translated into any other "objectively tangible" job consequences. Instead, he merely alleges that "the manager in the corporate office said that [Primrose] could write me up, but could not fire me" for attempting to leave a post early, which seems to suggest that the write-up and assignment of demerit points were little more than "mediate [employment] decisions" by SecTek. See Taylor, 132 F.3d at 765. Thus, Blackwell has failed to allege that the December 2011 disciplinary incident "materially affected . . . the terms, conditions, and privileges of [his] employment." See Douglas, 449 F.3d at 552. As a result, the incident does not rise to the level of an adverse employment action under the ADA.

None of the incidents that Blackwell alleges actually constitute an adverse employment action for the purposes of his ADA claim. Hence, he fails to state a claim, and SecTek's motion to dismiss his ADA claim will be granted.

**II.    ADEA Claim**

SecTek has also moved to dismiss Blackwell's ADEA claim for age discrimination. The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To state a claim for relief under the ADEA, a plaintiff must plead that "(i) [he] suffered an adverse employment action (ii) because of [his] . . . age." Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008). As is the case with the ADA, courts use Title VII standards to determine whether a plaintiff suffered an adverse action under the ADEA. See id. (applying Title VII's adverse-action standards to the ADEA and the Rehabilitation Act);

Weigert, 120 F. Supp. 2d at 17-20 (applying Title VII's adverse-action standards to the ADA). Thus, because Blackwell has failed to plead an adverse employment action under the ADA, see supra Section I.c, and because the ADA and the ADEA apply the same standards, Blackwell has also failed to allege an adverse employment action under the ADEA. Therefore, his ADEA claim must also fail.

Even had Blackwell sufficiently alleged an adverse employment action under the ADEA, he would still have to allege that SecTek took that action "because of" his age. Baloch, 550 F.3d at 1196. An adverse employment action is taken "because of" an employee's age only if "age was the 'but-for' cause of the challenged adverse employment action." Gross v. FBL Financial Servs., Inc., 557 U.S. 167, 180 (2009). A mere showing that "age was one motivating factor in [the employment] decision" is insufficient. Id.

Again, the four potential adverse actions alleged here are the medical exams, the Kaiser Permanente copay, the paid vacation time, and the December disciplinary incident. Blackwell alleges that Primrose ordered the medical examinations the day after he discovered Blackwell's handicapped parking permit. He alleges no facts—aside from his age itself—suggesting that his age was a factor in SecTek's decision to require the exams. Likewise, he offers no explanation whatsoever for his belief that he would "have to" pay for the stress test—let alone an explanation that would imply age discrimination on SecTek's part. From Blackwell's own allegations, it appears that SecTek placed him on vacation leave not because of his age, but rather at his own request. See Am. Compl. at 4 ("I requested to be on vacation leave until I [could] return to work."). And although Blackwell does allege that he was disciplined because of his age, see id. at 6 ("I did nothing wrong . . . [Primrose and Blackwell's other supervisor] are discriminating."), his allegations are entirely conclusory and are therefore "not entitled to the assumption of truth."

17

Iqbal, 556 U.S. at 679. Thus, Blackwell has failed to allege that his age was a but-for cause of any of the potential adverse employment actions, and his ADEA claim must be dismissed for this reason as well.

III. **Hostile Work Environment Claim**

Finally, SecTek argues that Blackwell has not stated a hostile work environment claim in his complaint.[8] Blackwell must allege sufficient facts making it plausible that his "employer subjected him to 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment.'" Baloch, 550 F.3d at 1201 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).[9] In applying this standard, courts consider "all the circumstances": "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . ; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. "[I]solated incidents (unless extremely serious)" are usually insufficient. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); see also Harris, 510 U.S. at 19-21 (finding a hostile environment where an employer continuously made derogatory comments to a female employee over a two-year period); Whorton v. WMATA, 924 F. Supp. 2d 334, 354 (D.D.C. 2013) (finding a hostile environment where a female employee alleged "that sexually offensive material was left

---

[8] SecTek also argues that to the extent Blackwell does state a claim, that claim should be dismissed because he did not exhaust his administrative remedies. Because the Court concludes that Blackwell does not state a claim, it need not address that argument.

[9] Courts evaluate hostile work environment claims under the ADA and ADEA using the same standards as under Title VII. See Marshall v. Fed. Express Corp., 130 F.3d 1095, 1099 (D.C. Cir. 1997) ("We assume without deciding that if working conditions inflict pain or hardship on a disabled employee . . . this could amount to a denial of reasonable accommodation . . . [that] may be viewed as the ADA equivalent of the hostile working environment claim cognizable under other discrimination laws."); Adams v. District of Columbia, 740 F. Supp. 2d 173, 187-88 (D.D.C. 2010) (applying Title VII case law to find that a plaintiff stated a claim for a hostile work environment under the ADA); Daka, Inc. v. Breiner, 711 A.2d 86, 94-95 (D.C. 1998) (listing courts of appeals that have adopted the hostile-work-environment theory for ADEA claims). Blackwell could also claim a hostile work environment for age and disability discrimination under the D.C. Human Rights Act. See id.; D.C. Code § 2-1402.11(a). Because all of these avenues of relief are potentially available to Blackwell, and because they all are evaluated under the same legal standard, the Court will consider whether Blackwell generally states a claim under the hostile work environment theory.

18

under [her] toolbox and that coworkers regularly displayed sexually explicit materials on their workbenches in her line of sight").

Blackwell's complaint contains only four factual allegations potentially relevant to his hostile work environment claim. First, the complaint alleges that Blackwell was required to take "a physical and stress test" and that "others were not subjected to the same tests." Am. Compl. at 2. Second, he alleges that he was required to pay the copay for medical tests. Id. at 4. Third, the complaint alleges that he took "[his] own vacation leave" while the results of those tests were pending. Id. And fourth, the complaint alleges that he was subjected to discipline in the December 2011 incident. Id. at 6. His complaint[10] contains no other factual allegations.[11]

But these allegations simply do not rise to the level of the "severe or pervasive" harassment required for a hostile work environment. They are more properly understood as part of a single "isolated incident" that began with Primrose's discovery of Blackwell's handicapped parking permit and ended with Blackwell's return to work a few weeks later.[12] See Faragher, 524 U.S. at 788; see also Johnson v. District of Columbia, 2014 WL 3057886, No. 13-1445, at *4 (D.D.C. July 8, 2014) (dismissing a plaintiff's hostile work environment claim because it was based on "an isolated disciplinary incident"). That isolated incident arose out of SecTek's

---

[10] In a filing that the Court has construed as a memorandum in opposition to SecTek's motion to dismiss, Blackwell makes other factual allegations—potentially about pre-November 2011 events—that might be relevant to his hostile work environment claim. See, e.g., Pl.'s Opp'n at 2 ("Primrose . . . placed camer[a]s on me."); id. at 3 ("[Primrose] was trying to fire me."). Nonetheless, even if it were clear that these acts took place before November 2011 (and it is not), courts assume only the truth of facts alleged in a plaintiff's complaint—not those alleged for the first time in an opposition to a defendant's motion to dismiss. See, e.g., Gordon v. National Youth Work Alliance, 675 F.2d 356, 360 (D.C. Cir. 1982). For this reason, and because Blackwell has already been given leave to amend his original complaint twice, the Court will not consider these fleeting and untimely representations.

[11] Blackwell makes some allegations about how he was treated after returning to work in October 2011. See, e.g., Am. Compl. at 7 ("After returning to work I was harassed, insulted, [and] intimidated."). Although these allegations are not so conclusory as to be completely disentitled to the "assumption of truth," see Iqbal, 556 U.S. at 679, they are not specific enough to "nudge" Blackwell's hostile work environment claim "across the line from conceivable to plausible." Id. at 680. Thus, they too fail to "make out an actionable hostile work environment claim." Morgan, 536 U.S. at 117.

[12] The December 2011 disciplinary incident might be considered to be a separate incident, but it is plainly not so "extreme" as to constitute a hostile work environment—standing alone or in combination with the other alleged conduct. See Faragher, 524 U.S. at 788.

legitimate concern that its employee might not be able to perform his duties. See § 12112(d)(4)(B) (employers "may make inquiries into the ability of an employee to perform job-related functions"). And even as isolated incidents, the alleged actions are not "extremely serious," Faragher, 524 U.S. at 788, nor did they create "an abusive work environment," Harris, 510 U.S. at 21, so they cannot be considered to constitute a hostile work environment standing alone. Considering "all the circumstances," the conduct alleged in Blackwell's complaint is simply not severe or pervasive enough to have "alter[ed] the conditions of [his] employment." Id. at 21. Hence, the allegations in Blackwell's complaint are insufficient to "make out an actionable hostile work environment claim," Morgan, 536 U.S. at 117, and SecTek's motion to dismiss Blackwell's hostile work environment claim will be granted.

## **CONCLUSION**

For the foregoing reasons, SecTek's motion to dismiss Blackwell's complaint will be granted. A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: August 5, 2014